UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Prince Pilgrim,

         Plaintiff,

                   **Hon. Hugh B. Scott**
                   10CV795
                   Consent

         v.

                   **Decision**
                   **&**
                   **Order**

Lieutenant T. Dixon, et al.,

         Defendants.
_____

Before the Court is the defendants' motion to dismiss (Docket No. 5).

**Background**

The plaintiff, Prince Pilgrim ("Pilgrim"), commenced this action alleging that his rights under 42 U.S.C. § 1983 were violated because he was denied due process in connection with a disciplinary hearing which took place at the Attica Correctional Facility. Named as defendants are Lieutenant T. Dixon ("Lt. Dixon"); and Albert Prack, Acting Director of Special Housing, department of Correctional Services ("Prack").

More specifically, the plaintiff alleges that on July 5, 2010, he was scheduled for a urinalysis test but he had difficulty producing urine and was told to sit on a waiting bench in A-

1

Block. (Docket No. 1 at ¶¶ 1-2). Pilgrim asserts that a correction officer (identified only as "C.O. Brun") noticed Pilgrim's difficulty and returned Pilgrim to his cell. (Docket No. 1 at ¶4). On July 7, 2010, the plaintiff was issued a Misbehavior Report listing two infractions: (1) refusing a direct order; and (2) urinalysis testing violation. (Docket No. 1 at ¶5). On July 10, 2010, a hearing was commenced with respect to the Misbehavior Report. Lt. Dixon presided over the hearing. (Docket No. 1 at ¶ 7). The plaintiff states that he objected to proceeding with the hearing because he was not provided effective assistance by an employee assistant because the assistant was denied the plaintiff's previous urinalysis test results (which the plaintiff apparently wanted to introduce as "mitigating" evidence). (Docket No. 1 at ¶ 8). Lt. Dixon noted the plaintiff's objection, but stated that the requested documents were irrelevant. (Docket No. 1 at ¶ 9). The plaintiff asserted that he was not guilty of the charged violation because he was not provided with three hours notice. Pilgrim also called a witness to testify that he was in his cell before the A-Block recreation bell. The plaintiff argues that Lt. Dixon discredited his witness, but failed to discredit C. O. Brun. (Docket No. 1 at ¶¶ 11-12). Pilgrim was found guilty at the disciplinary hearing and sentenced to 6 months keeplock;15 months loss of phones; 6 months loss of commissary; and 9 months loss of recreation. (Docket No. 1 at ¶ 13). The plaintiff filed an administrative appeal, which resulted in the conviction being affirmed, but the penalty reduced to 3 months keeplock; 6 months loss of recreation and other privileges. (Docket No. 1 at ¶16).

**Motions to Dismiss**

      The defendants have moved to dismiss the complaint on the grounds that the plaintiff has not established an atypical hardship, and therefore, has not demonstrated a loss of a liberty

interest. The defendants also assert that the facts alleged by the plaintiff do not support a due process claim.

Generally, in reviewing a complaint with respect to ta motion to dismiss, the Supreme Court has held that "only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937, 1950 (2009) (internal citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 565-66 (2007). Under Iqbal, factual allegations must be sufficient to support necessary legal conclusions. Iqbal, 129 S.Ct. at 1950-51. "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir.2010) (quoting Iqbal, 129 S.Ct. at 1950). The Court must then consider the factual allegations in the complaint to determine if they plausibly suggest an entitlement to relief. Iqbal, 129 S.Ct. at 1951; see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir.2009).

Liberty Interest

In the instant case, the plaintiff asserts that his due process rights were violated in connection with the disciplinary hearing resulting from his failure to provide a sample for a

3

urinalysis test. An inmate's liberty interest is implicated by prison discipline only if the discipline "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). In order to establish the existence of a protected liberty interest, plaintiff must (1) "establish that the confinement or restraint complained of creates an 'atypical and significant hardship ... in relation to the ordinary incidents of prison life;'" Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir.2000) (quoting Sandin, 515 U.S. at 484 (1995)), and (2) "establish that 'the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint,' " Id. In order to make this showing, a plaintiff must demonstrate that the conditions under which he was held in keeplock differed dramatically from the basic conditions of his incarceration.

      The duration and conditions of confinement are factors to be considered by a court when determining whether a confinement rises to the level of "atypical and severe hardship." See Palmer v. Richards, 364 F.3d 60, 64 (2d Cir.2004). The Second Circuit discussed the duration element in Colon v. Howard, 215 F.3d 227 (2d Cir.2000). In that case, the Court held that a 30-day confinement was not an atypical hardship, under the "normal conditions of [Special Housing Unit] confinement" defined as "a solitary confinement cell; kept in cell for 23 hours a day; permitted to exercise in the prison yard for one hour a day ...; limited to two showers a week and denied various privileges available to general population prisoners, such as the opportunity to work and obtain out of cell schooling." Colon, 215 F.3d. at 230. Judge Jon O. Newman, writing the majority decision for the Court, stated that he was in favor of imposing a bright line rule of 180-days confinement to meet the standard set in Sandin. Judge Newman reasoned that this 180-day rule would, among other things, "permit dismissal of the many cases where the facts alleged

4

in the complaint demonstrated that the duration and conditions of confinement do not exceed an announced standard." Colon, 215 F.3d. at 233. Notwithstanding, the Second Circuit declined to set a bright line rule in Colon. In a concurring opinion in Colon, Judge John M. Walker, Jr. stated: "I would not be surprised if the ultimate rule in this circuit for the duration of SHU incarceration that triggers due process, arrived at through the process of litigation and adjudication, settles on something close to 180 days. At present, 101 days in the SHU does not trigger due process protection, ... , while, with this case, 305 days does. The gap will soon narrow and a rule will emerge; but it will do so through the appropriate process: adjudicative, not legislative, rule-making." Colon, 215 F.3d. at 237.

There still is "no bright-line rule regarding the length or type of sanction" that meets the Sandin standard, however, the Courts in this Circuit have held that punishments similar to or more severe than that issued to the plaintiff were insufficient to establish a protected liberty interest. See Sealey v. Giltner, 197 F.3d 578, 589-90 (2d Cir.1999) (101 days in normal SHU conditions were not atypical and significant); Walker v. Caban, 2008 WL 4925204, at *11 (S.D.N.Y. Nov.19, 2008)(finding 90 day period in solitary confinement, without more, did not implicate a liberty interest under Sandin); Rivera v. Coughlin, 1996 WL 22342, at *5 (S.D.N.Y. Jan.22, 1996) (89 days in keeplock does not create a liberty interest).

In the instant case, the plaintiff was ultimately subjected to 90 days keeplock and 6 months loss of certain privileges.[1] The plaintiff has not demonstrated that the conditions which

---

[1] The plaintiff focuses much of his argument on the fact that he was originally sentenced to 180 days in keeplock before the sentence was reduced upon administrative appeal. "Where the length of confinement imposed is different from the time actually served, the duration of the confinement actually served is the appropriate time period to be analyzed for purposes of determining whether plaintiff had a liberty interest that triggered due process protections."

he was subjected to presented an atypical and severe hardship. The plaintiff has not articulated a protected liberty interest under the undisputed facts in this case. Thus, the defendants' motion to dismiss is granted on this ground.

Due Process

Even if the plaintiff had set forth facts sufficient to establish a protected liberty interest, the plaintiff has not demonstrated that his due process rights were violated in connection with the July 10, 2010 disciplinary hearing. In support of his due process claim, the plaintiff asserts two grounds: (1) that he was denied copies of his previous urinalysis reports which would demonstrate prior compliance and (2) that Lt. Dixon did not find the testimony of the plaintiff's witness credible, but instead found the testimony of the correction officer credible.

To comport with due process, the written findings of a prison disciplinary hearing must be based on "some evidence." Superintendent v. Hill, 472 U.S. 445 (1985). This standard is satisfied if "there is any evidence in the record that supports" the decision. Friedl v. City of New York, 210 F.3d 79, 85 (2d Cir.2000) (emphasis in original). In Hill, the Supreme Court made it clear that the Constitution "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Hill, 472 U.S. at 455. Nor does "[t]he Federal Constitution ... require evidence that logically precludes any conclusion but the one reached by the disciplinary board." Hill, 472 U.S. at 457.

With respect to the claim that he was denied prior urinalysis test results, the plaintiff

---

Leevon v. Goord, 2003 W L 22384787 at *6, n. 5 (W.D.N.Y. Sep.4, 2003) citing Colon, 215 F.3d. at 331. See also Orelvis v. State of New York Dept. of Correctional Services, 2009 WL 1663996 (W.D.N.Y. 2009)(Siragusa, J)..

acknowledges that Lt. Dixon advised him that documents relating to prior urinalysis tests were not relevant as to whether he was guilty of failing to provide a urine sample in the instance underlying the Misbehavior Report. (Docket No. 1 at ¶ 9).  The plaintiff has not articulated any basis to find that the prior urinalysis reports were relevant to the issues involved in the July 10, 2010 hearing.

The other basis asserted by the plaintiff is the fact that the hearing officer failed to find the plaintiff's witness to be credible.  It appears that, during the disciplinary hearing, Pilgrim claimed that Correction Officer Brun improperly terminated plaintiff's opportunity to provide a urine sample.  The plaintiff produced a witness to provide testimony to the effect that the plaintiff was in his cell before the recreation period. (Docket No. 8 at page 4).[2]  The plaintiff complains that Lt. Dixon failed to credit the testimony of this witness, and instead credited the testimony of Correction Officer Brun.  The fact that Lt. Dixon made these credibility assessments does not amount to a due process violation. As set forth in Hill, it is not for the court to re-weigh the evidence or the witnesses' credibility at prison disciplinary hearings.  See also Zimmerman v. Seyfert, 2007 WL 2080517 (N.D.N.Y. 2007)(It is not for the court to re-weigh the evidence or the witnesses' credibility at prison disciplinary hearings); Johnson v. Goord,

---

[2]  To the extent the plaintiff suggests that the Department of Corrections ("DOCS") regulations relating to the taking of urine tests were not followed, such an argument is of no avail. See Alicea v. Howell, 387 F.Supp.2d 227 (W.D.N.Y. 2005), which rejected the plaintiff's argument that the DOCS regulations relating to testing and preserving his urine sample were not followed, finding that "[e]ven if that were so, however, that would not give rise to a due process claim." Alicea, 387 F.Supp.2d at 233 citing Shakur v. Selsky, 391 F.3d 106, 119 (2d Cir.2004)("[R]egardless of state procedural guarantees, the only process due an inmate is that minimal process guaranteed by the Constitution ....") and Holcomb v. Lykens, 337 F.3d 217, 224 (2d Cir.2003)("[S]tate statutes do not create federally protected due process entitlements to specific state-mandated procedures.")

487 F.Supp.2d 377 (S.D.N.Y. 2007)(Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board).

In light of the above, as a matter of law, the plaintiff has not articulated facts sufficient to maintain a claim that his due process rights were violated as a result of the underlying disciplinary proceedings.

## Conclusion

The defendants' motion to dismiss is granted consistent with the above.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
September 9, 2011